IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY G. SLADE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-6756 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                                                                                          MARCH 23, 2012

      Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 11), defendant's response and plaintiff's reply thereto (Doc. Nos. 14 & 15), I make the following findings and reach the following conclusions:

      1.      On January 19, 2007, Terry Slade protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433; 1381-1383f, ultimately alleging an onset date of August 30, 2006. (Tr. 39, 79-85). Throughout the administrative process, including a hearing held on September 4, 2008, before an ALJ, Slade's claims were denied. (Tr. 7-15; 16-41; 45-53). After the Appeals Council denied review, pursuant to 42 U.S.C. § 405(g), Slade filed her complaint in this court on November 29, 2010. (Tr. 1-3; Doc. No. 3).

      2.      In his September 16, 2008, decision, the ALJ concluded, *inter alia*, that: (1) Slade had a severe mood disorder; (2) her impairment did not meet or equal listing 12.04; (3) she had the RFC to perform any work with no detailed instructions; (4) she could perform work existing in significant numbers in the national economy, and (5) Slade was not disabled. (Tr. 9, Finding 3; 10, Finding 4; 11, Finding 5; 14, Finding 10; 15, Finding 11).

      3.      The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

      4.      Slade raises several arguments contending that the decision of the ALJ was legally insufficient or not supported by substantial evidence. I find merit in one of her arguments. Because the ALJ legally erred by failing to comply with S.S.R. 96-6p, this case must be remanded. S.S.R. 96-6p provides that while an ALJ is not bound by the findings made by,

*inter alia*, state agency psychologists, the ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions." S.S.R. 96-6p.  Here, the record contains a psychiatric review technique form from state agency psychologist, Dr. John Gavazzi, dated May 7, 2007.  (Tr. 309-21).  It is undisputed that the ALJ failed to mention or explain the weight given to this opinion.  It is further undisputed that, while the ALJ found in the RFC assessment that Slade's only work-related limitation was a prohibition on detailed instructions, Dr. Gavazzi opined that Slade had additional limitations.  Specifically, Dr. Gavazzi found Slade moderately limited in her abilities to:  (1) maintain social functioning; (2) maintain concentration, persistence or pace; (3) understand, remember, and carry out detailed instructions; (4) interact appropriately with the general public; (5) accept instruction and respond appropriately to criticism from supervisors; and (6) respond appropriately to changes in the work setting.[1]  (Tr. 319, 322-23).

Defendant responds by essentially alleging that the ALJ's failure to comply with S.S.R. 96-6p was harmless.  I disagree.  The record of Slade's mental impairments is sparse, as noted by the ALJ.  (Tr. 13).  Besides Dr. Gavazzi's opinion, there are only two other opinions regarding Slade's mental limitations affecting her ability to work.  (Tr. 293-95; 416-20).  Both of these opinions are from treating physicians and both were rejected by the ALJ.  (Tr. 13).  The failure of the ALJ to discuss the one remaining opinion, which provided more restrictive limitations than those found in the ALJ's RFC assessment, is instead, quite serious.  For example, the ALJ avoided utilizing a vocational expert in this case because he found that Slade's only functional limitation regarded detailed instructions, which would not significantly erode the occupational base for unskilled work pursuant to S.S.R. 85-15.  If the ALJ had incorporated any of Dr. Gavazzi's other limitations into his RFC assessment, a vocational expert's testimony would have been necessary and the ALJ's ultimate findings could have been different.

5.   The ALJ legally erred when he failed to comply with S.S.R. 96-6p by ignoring Dr. Gavazzi's opinion and by failing to explain the weight given thereto.  Therefore, this case must be remanded in order for the ALJ to re-consider the evidence.

An appropriate Order follows.

---

[1] It is especially perplexing that the ALJ decided not to add to the RFC assessment limitations on work-related social interactions.  There are many reports in the record of Slade's "extreme anger", of her inability to deal appropriately with others, and of being "abnormally irritable."  (Tr. 221; 227; 234; 248; see also Tr. 215; 219; 226).  Every physician in the record concluded that Slade had moderate to marked social difficulties.  (Tr. 294-95; 319; 323; 418-19).  The ALJ concluded that Slade had only mild difficulties in social functioning because she raised her children and interacted appropriately with her healthcare providers.  (Tr. 11).  Neither of these reasons are particularly probative of Slade's ability to socially interact in a work setting under work stressors.  See S.S.R. 85-15 (differentiating between work type stressors and the ability to function at home).  The ALJ also noted that Slade was polite and cooperative at the hearing, but an actual reading of the transcript suggests otherwise.  (Tr. 11; 33-39).